The judgment of the court was pronounced by
Eustis, C. J.
On the 6th August, 1841, Alfred J. Lowry, curator of the succession of Alex. McNeill, deceased, filed a petition in the late court of the ninth district sitting for the parish of Madison, in which he claims, as belonging to the succession, a certain plantation situated in said parish, together with certain slaves employed thereon, being forty-four in number. He alleges that since the death of the said McNeill, James Erwin illegally, and by fraud and collusion, and, without any legal title thereto, took possession of all said property and retained possession of the same. The object of the suit is to recover the above described property with the fruits and revenues thereon.
This case was at issue in May, 1842, and was tried in the district court in December, 1842; the judgment of the district court was in favor of the plaintiff. On an appeal taken from this judgment to the Supreme Court, the following decree was rendered by the late Supreme Court in 1843: “ The judgment of the district court, so fax as it decrees to the plaintiff the right to, and possession of the plantation and slaves described in the petition, is affirmed; also as to the *207 non-suit in relation to the slaves Kitty Dixon and her children, and Little Henry or Henry Lee, and as to the fruits and revenues, and their application to the price and interest said to have been paid by the defendant; but as relates to the judgment of $436 55 with interest, as stated therein, against the succession of Alexander McNeill, deceased, the same is annulled and reversed; and we do order and decree, that no writ of possession issue in this case to put the plaintiff in possession of the plantation and slaves, until he pay the defendant, or deposite in the hands of the sheriff of the parish, to the credit of the defendant, the sum of $436 55, with interest thereon, at the rate of five per cent per annum, from the 18th day of March, in the year 1843, until the day of payment, or deposit: the appellee paying the costs of the appeal.”
A writ of error on this judgment was sued out by the defendant to the Supreme Court of the United States, on which, in 1849, the following judgmeut was rendered : “This case came on to be heard on the transcript of the record from the Supreme Court of the Western District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be, and the same is hereby reversed, with costs; and that this cause be and the same is hereby remanded to the said Supreme Court, with directions to proceed therein in conformity to the opinion of this court.”
The defendant Enoin claimed the plantation and slaves by virtue of a purchase made by him on the 6th July, 1840, at a public sale made by the Marshal of the United States, under process from the Circuit Court of the United States for the Eastern District of Louisiana. The district court, by its judgment, annulled the sale on two distinct grounds, to wit, the want of jurisdiction in the Circuit Court of the United States, and a deficiency in the notice of seizure. The Supreme Court of the State of Louisiana affirmed this portion of the judgment of the district court. The decree of the Supreme Court of the United States, in reversing the judgment of the Supreme Court, has closed the case against the plaintiff, so far as the court of the United States had exercised jurisdiction by virtue of the writ of error, to wit, as to the validity of the defendant’s title to the land and slaves which he acquired under the proceedings from the Circuit Court of the United States. That portion of the decree which remands the cause for further proceedings, brings up before this court the questions not covered by the decree, in which the Supreme Court of the United States did not assume to act.
The question concerning the fraud and collusion charged in the petition, is, therefore, by the reversal of the entire judgment of the Supreme Court, an open one for our decision.
The Supreme Court of the State in relation to this subject, uses the following language: “ We have stated the facts of the case fully, and from them we have strong grounds to believe, that there was collusion between the parties to the sale, under which the defendant claims.”
The opinion of the court contains so full an exposition of the facts and evidence, that we deem a reference to the report of the case all that is necessary. See the case of Lowry v. Erwin, 6 R. R. 192 to 216. The report of the Supreme Court of the United States is equally full in this respect. See 7 Howard, 385.
On a delibérale consideration of the whole evidence, we have come to the conclusion that the fraud and collusion charged in the petition was not proved, and that we should not be justified in setting aside the sale on that ground.
An application has been made to send the case back for the purpose of enabling the plaintiff to exhibit further evidence. The parties have had full opportuni *208 ties for the exhibition of their testimony. The plaintiff has thought it for his interest to leave to conjecture what ought to have been established by evidence; his allegations were of the most indefinite and general character, and are not such as ought to form a basis of judicial proceedings in actions which have for their object, however that object may be disguised,- to set aside or annul sales made on the authority of courts of justice.
The plaintiff’s petition does not allege that the creditors of the succession have been defrauded, or are to be injured by the sale to Erwin; it merely alleges that he, by fraud and collusion, took, without any legal title, possession of the property. In what did the fraud consist? and with whom was the collusion? It is a matter which has great weight with us, that the only person with whom there could be any collusion was Hector McNeill, the executor, who was the universal legatee of the deceased, and he who had the greatest interest in protecting the interests of the succession, which has not been shown to have been insolvent. On the contrary, as far as we can judge from the documents before us, no creditor can be injured by the sale which the plaintiff attempts virtually to set aside.
It is said that since the defendant took out his writ of error, he has acquiesced in the judgment of the Supreme Court, by having received from the plaintiff, through the sheriff, the sum of $436 55, due said Erwin by said judgment. This matter was brought before the Supreme Court of the United States, os may be seen by a report of the case. That court determined that the receipt of the money by the plaintiff did not defeat the writ of error. We are relieved from the necessity of examining the consequences of the receipt of this money by Erwin, so far as it relates to the appeal as it now stands before this court, exclusively of matters in which the United States Court has not had cognisance ; inasmuch as we have no evidence of the fact of the receipt of the money.
The transcript of appeal from the Supreme Court of the United States was filed 7th June, 1849, and abundant time has been afforded for any proofs on which the action of this court could be based; it would be a precedent inadmissible in practice to allow any further delay. The case has been nearly nine years pending, and must be closed.
The judgment of the district court is therefore reversed, and judgment rendered for the defendant, with costs in both courts.